UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ALLSTAR MARKETING GROUP, LLC,               :
MERCHANT MEDIA, LLC & EDISON NATION,
LLC,                                        :

                                            :          10 Civ. 1764 (RMB) (AJP)
              Plaintiffs,                   :

                                            :          **REPORT AND RECOMMENDATION**
         -against-                          :

MEDIA BRANDS CO., LTD. & SAONJAY            :
MIRPUR,
                                            :
              Defendants.                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Chief Magistrate Judge:**

**To the Honorable Richard M. Berman, United States District Judge:**

        Plaintiffs All-Star Marketing Group, LLC, Merchant Media, LLC and Edison Nation,

LLC commenced this action against defendants Media Brands Co., Ltd. and Saonjay Mirpur for

infringing plaintiffs' patents, registered trademarks and copyrighted website images.  (Dkt. No. 5:

Am. Compl. ¶¶ 1-2, 108-411.)  Defendants failed to respond to the complaint, and, on July 14, 2010,

Judge Berman entered a default judgment against defendants, permanently enjoining them from

further infringing use of plaintiffs' patents, trademarks and copyrighted images.  (Dkt. No. 24:

7/14/10 Default Judgment.)  Judge Berman referred the matter to me for an inquest as to damages

and a review of the injunction's scope.  (Dkt. No. 25: 7/19/10 Referral.)  Plaintiffs submitted papers

on the inquest seeking $498,684.64 in statutory damages, attorneys' fees and costs, including: (a) statutory damages of $50,000 for each of eight marks, totaling $400,000; (b) statutory damages of $50,000 for copyright infringement of plaintiffs' Touch N Brush website; and (c) attorneys' fees of $43,389.50 and costs of $5,295.14.  (Dkt. No. 27: 8/6/10 Yousuf Aff. ¶¶ 2-3.)  Corporate defendant Media Brands has not submitted opposition papers, and the deadline for doing so has long passed.  (See Dkt. No. 26: 7/21/10 Order.)  Individual defendant Mirpur has submitted pro se opposition papers, which cannot be considered on behalf of Media Brands, since a corporation cannot appear pro se.[1/]  (See Dkt. No 28: 9/07/10 Order.)

       For the reasons discussed below, the Court should award plaintiffs $337,000 in statutory damages for trademark and copyright infringement and for attorneys' fees.  Further, the

---

[1/]    See, e.g., Berrios v. N.Y.C. Hous. Auth., 564 F.3d 130, 133 (2d Cir. 2009) ("Thus, we have held that a layperson may not represent a corporation of which he is the sole shareholder; a limited liability company of which he is the sole member; [or] a partnership in which he is a partner . . . .") (citations omitted); Lattanzio v. COMTA, 481 F.3d 137, 139 (2d Cir. 2007) (28 U.S.C. § 1654 "does not permit 'unlicensed laymen to represent anyone else other than themselves.' . . . This rationale 'applies equally to all artificial entities.'  Accordingly, a layperson may not represent a separate legal entity such as a corporation."); Grace v. Bank Leumi Trust Co., 443 F.3d 180, 192 (2d Cir. 2006) ("'[I]t is settled law that a corporation may not appear in a lawsuit against it except through an attorney . . . .'") (quoting SEC v. Research Automation Corp., 521 F.2d 585, 589 (2d Cir. 1975)), cert. denied, 549 U.S. 1114, 127 S. Ct. 962 (2007); Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 172 (2d Cir. 2001) ("As a corporation, appellant, Galaxiworld, could only appear with counsel.  [Individual defendant] could not represent the corporation pro se."); Jacobs v. Patent Enforcement Fund, Inc., 230 F.3d 565, 568 (2d Cir. 2000) ("[I]t is settled law that a corporation cannot generally appear in federal court except through its lawyer."); Pronotica of Am., Inc. v. Johnson Grossfield, Inc., 98 Civ. 7414, 2000 WL 424184 at *2 (S.D.N.Y. Apr. 18, 2000) (Peck, M.J.) ("[C]orporations can only appear by counsel.") (citing cases).

permanent injunction against defendants' entered by Judge Berman is appropriate in scope and should not be modified.

## FACTS

Where, as here, "'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.) (quoting C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil 3d § 2688 at 58-59 (3d ed. 1998)).

Plaintiff Edison owns the "innovation rights" and "intellectual property" to consumer products and licenses those rights to manufacturers, retailers and direct response marketers, including plaintiffs Allstar and Merchant.  (Dkt. No. 5: Am. Compl. ¶ 14.)  Allstar and Merchant produce and sell various consumer products, which they market through direct response and catalog channels, including extensive television advertising. (Am. Compl. ¶ 13.)  Collectively, plaintiffs own or have exclusive licensing rights, including the right to enforce trademark rights, in the following nine trademarks registered with the United States Patent and Trademark Office:  EmeryCat (Am. Compl. ¶¶ 15, 20 & Ex. B); Mister Steamy (Am. Compl. ¶¶ 24, 27-29 & Ex. D); Touch N Brush (Am. Compl. ¶¶ 33, 35-37 & Ex. F); Aqua Globes (Am. Compl. ¶¶ 42-45 & Ex. I); Snuggie (Am. Compl. ¶¶ 48-50 & Ex. J); Perfect Brownie (Am. Compl. ¶¶ 54-56 & Ex. K); Bumpits (Am. Compl. ¶¶ 60-62 & Ex. L); Topsy Turvy (Am. Compl. ¶¶ 68-70 & Ex. M); and Strap Perfect (Am. Compl. ¶¶ 76-77).  Plaintiffs have "continuously used [these] trademark[s] . . . in connection with the advertising,

4

distribution, marketing and sale of their . . . product[s]."  (Am. Compl. ¶¶ 18, 27, 31, 36, 46-47, 51-52, 55, 57-58, 65-66, 73-74, 78-79.)  Plaintiff Merchant also owns a United States registered copyright in the TOUCH N BRUSH website, through which Merchant sells and distributes its Touch N Brush toothpaste dispenser product.  (Am. Compl. ¶ 38 & Exs. G-H.)

Defendant Media Brands is a Hong Kong corporation that supplies consumer products to United States retailers and distributors.  (Am. Compl. ¶ 11.)  Mirpur is Media Brands' principle owner.  (Am. Compl. ¶ 12.)  After plaintiffs launched their Emery Cat, Mister Steamy, Touch N Brush, Aqua Globes, Snuggie, Perfect Brownie, Bumpits, Topsy Turvy and Strap Perfect products, defendant Media Brands, under the personal direction and control of defendant Mirpur (Am. Compl. ¶¶ 12, 81, 98), created its own nearly identical but inferior products (Am. Compl. ¶¶ 81, 84).  Without plaintiffs' consent or authorization, defendants "began advertising and promoting their competing products . . . using Plaintiffs' trademarks and/or confusingly similar variations thereof."  (Am. Compl. ¶ 84.)[2]  Further, defendants have displayed photographs taken from plaintiffs'

_____

[2]   Examples of Media Brands' use of plaintiffs' trademarks or confusingly similar variations thereof in connection with the advertising and promotion of their competing products include: (1) emails to buyers advertising Media Brands' own products as "Mister Steamy," "Emery Cat" and "Snuggie for Couples," with hyperlinks linking to plaintiffs' product websites (Am. Compl. ¶¶ 85-86, 89 & Exs. N & Q); (2) email to a potential customer proposing to sell 5,000 Snuggies at $2.20/item, as well as an email attachment of Media Brands' catalog advertising the "SnugMe Blanket," "As Seen on TV" (Am. Compl. ¶ 87 & Ex. O); (3) promotional materials on Media Brands' website describing Media Brands as an authorized distributor of Bumpits, Strap Perfect, Aqua Globes and Snuggie (Am. Compl. ¶ 88 & Ex. P); (4) promotional materials in Media Brands' catalog displaying the Snuggie, Perfect Brownie, Strap Perfect, Topsy Turvy Tomato Planter, Bumpits, and Touch N Brush marks next to pictures of plaintiffs' products, Media Brands' competing products and/or "As
(continued...)

copyrighted Touch N Brush website in defendants' own promotional materials for their competing toothpaste dispenser product.  (Am. Compl. ¶ 218.)

Plaintiffs' amended complaint asserts claims, inter alia, for trademark infringement in violation of 15 U.S.C. § 1114 (Am. Compl. ¶¶ 114-22, 150-58, 186-94, 223-31, 294-302, 324-32, 351-59) and copyright infringement of the Touch N Brush website in violation of 17 U.S.C. § 101 (Am. Compl. ¶ 216-22).  Plaintiffs assert that defendants' infringement was willful.  (E.g., Am. Compl. ¶ 96.)

Plaintiffs seek statutory trademark and copyright damages totaling $450,000 ($50,000 for each of eight trademarks and $50,000 for the Touch N Brush website coppyright infringement), plus attorneys' fees of $43,389.50 and costs of $5,295.14, totaling $498,684.64.  (Dkt. No. 27: 8/6/10 Yousuf Aff. ¶¶ 2-3; see page 2 above.)

## ANALYSIS

The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'"  Transatlantic Marine Claims Agency, Inc. v. Ace Shipping

---

2/      (...continued)
Seen on TV" text (Am. Compl. ¶ 90 & Ex. R). Media Brands is neither an authorized distributor of plaintiffs' products, nor have they ever advertised their own products on television.  (Am. Compl. ¶¶ 93-95.)  Further, when Media Brands has received orders for these advertised and promoted products, they have shipped their own inferior products, despite the representation to consumers that the goods advertised are plaintiffs' authentic products.  (See Am. Compl. ¶ 103.)

Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

## I.  TRADEMARK DAMAGES

Pursuant to 15 U.S.C. § 1117(c), plaintiffs seek to recover statutory damages for trademark infringement of $50,000 for each of eight infringed trademarks (Emery Cat, Mister Steamy, Touch N Brush, Snuggie, Perfect Brownie, Bumpits, Topsy Turvy, and Strap Perfect), for a total of $400,000.  (Dkt. No. 27: 8/6/10 Yousuf Aff. ¶ 3(a); Dkt. No. 21: Pls. Default Judgment Br. at 7-8.)  Plaintiffs do not seek statutory damages as to Aqua Globes, because that mark has not yet been registered on the Principal Register of the Patent and Trademark Office.  (Pls. Default Judgment Br. at 8.)

The Court notes that while plaintiffs seek statutory damages for trademark infringement for the Perfect Brownie trademark, the Amended Complaint did not contain a trademark infringement cause of action for Perfect Brownie.  (See Dkt. No. 5: Am. Compl. Count XIX (False Designation of Origin re Perfect Brownie), Count XX (Perfect Brownie Trademark Dilution).)  Accordingly, plaintiffs cannot obtain damages under § 1117(c) for Perfect Brownie.  See, e.g., DLJ Mortg. Capital, Inc. v. E. Am. Mortg. Co., 07 Civ. 7933, 2009 WL 1835025 at *3 (S.D.N.Y. June 24, 2009) (Where complaint sought damages for breach of contract concerning seven loans, plaintiff could not recover on defendant's default for three loans not mentioned in the complaint.).

Section 1117(c) provides:

(c)     Statutory damages for use of counterfeit marks

In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--

(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

(2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c)(1)-(2).[3/]

The rationale for § 1117(c) is the practical inability to determine profits or sales made by counterfeiters. See, e.g., Bus. Trends Analysts, Inc. v. Freedonia Group, Inc., 887 F.2d 399, 406 (2d Cir. 1989) (Copyright infringement case. "Congress provided for statutory damages,

---

[3/]     Plaintiffs rely on § 1117(c), stating: "This action clearly involves the use of counterfeit marks as defined by 15 U.S.C. § 1116(d), given that Defendants have used Plaintiffs' actual . . . trademarks to advertise, promote and sell products nearly identical to Plaintiffs' products bearing those marks." (Pls. Default Judgment Br. at 8, citing Am. Compl. ¶¶ 84-91.) Case law supports that defendants used counterfeits of plaintiffs' registered trademarks. See, e.g., Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp., 689 F. Supp. 2d 585, 597 (S.D.N.Y. 2010) (products bearing plaintiff's mark but containing deviations in production quality were counterfeit products); Motorola, Inc. v. Abeckaser, No. 07-CV-3963, 2009 WL 962809 at *5-7 (E.D.N.Y. Apr. 8, 2009) (defendant's products and packaging were counterfeit because they contained materials, words and images that were inferior and inconsistent to the plaintiff's original product and packaging); Cartier v. Aaron Faber Inc., 512 F. Supp. 2d 165, 169 (S.D.N.Y. 2007) ("A product is deemed counterfeit if it contains an original mark that is likely to deceive the public as to its origin.").

an automatic measure of recovery to plaintiffs regardless of injury or profits" "where 'proof of damages or discovery of profits' is 'difficult or impossible.'"); Warner Bros. Inc. v. Dae Rim Trading, Inc., 877 F.2d 1120, 1126 (2d Cir. 1989) (Copyright infringement case.  "Statutory damages are awarded when no actual damages are proven or they are difficult to calculate."); Union of Orthodox Jewish Congregations of Am. v. Am. Food & Beverage Inc., 704 F. Supp. 2d 288, 290 (S.D.N.Y. 2010) ("Subsection 1117(c) provides trademark holders an alternative remedy to actual damages because 'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept[,] . . . making proving actual damages in these cases extremely difficult if not impossible.'") (quoting S.Rep. No. 104-177, at 10 (1995)); Burberry Ltd. v. Euro Moda, Inc., 08 Civ. 5781, 2009 WL 4432678 at *2 (S.D.N.Y. Dec. 4, 2009) (Peck, M.J.); Louis Vuitton Malletier, S.A. v. LY USA, 06 Civ. 13463, 2008 WL 5637161 at *1 (S.D.N.Y. Oct. 3, 2008) ("In enacting the statutory damages provision of the Lanham Act, Congress found, generally, that 'counterfeiters' records are nonexistent, inadequate or deceptively kept in order to willfully deflate the level of counterfeiting activity actually engaged in, making proving actual damages in these cases extremely difficult if not impossible.'"); Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc., 03 Civ. 2132, 2006 WL 728407 at *6 (S.D.N.Y. Mar. 21, 2006) ("In crafting the statutory damages provision of the Lanham Act noted above, Congress took into account that oftentimes, 'counterfeiters' records are nonexistent, inadequate or deceptively kept in order to willfully deflate the level of counterfeiting activity actually engaged in, making proving actual damages in these cases extremely difficult if not

impossible.'"); <u>Rodgers</u> v. <u>Anderson</u>, 04 Civ. 1149, 2005 WL 950021 at *2 (S.D.N.Y. Apr. 26, 2005) (Peck, M.J.).[4]/

            Defendants have defaulted (<u>see</u> page 5 above) and by virtue of their default are deemed to be willful infringers. <u>E.g.</u>, <u>Chloe</u> v. <u>Zarafshan</u>, 06 Civ. 3140, 2009 WL 2956827 at *7 (S.D.N.Y. Sept. 15, 2009) ("Willfulness may be established by a party's default because an innocent party would presumably have made an effort to defend itself."); <u>Malletier</u> v. <u>Carduci Leather Fashions, Inc.</u>, 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009) ("Here, by virtue of its default, [defendant] has admitted [plaintiff]'s allegation that it acted knowingly and intentionally or with reckless disregard or willful blindness to [plaintiff]'s rights."); <u>GAKM Res. LLC</u> v. <u>Jaylyn Sales Inc.</u>, 08 Civ. 6030, 2009 WL 2150891 at *6 (S.D.N.Y. July 20, 2009) (noting that for purposes of § 1117(b), "where a defendant defaults, that may be taken as evidence of willful infringement");

---

[4]/     See also, e.g., <u>Nike, Inc.</u> v. <u>Top Brand Co.</u>, 00 Civ. 8179, 2006 WL 2946472 at *2 (S.D.N.Y. Feb. 27, 2006), <u>report & rec. adopted</u>, 2006 WL 2884437 (S.D.N.Y. Oct. 6, 2006); <u>Silhouette Int'l Schmied AG</u> v. <u>Chakhbazian</u>, 04 Civ. 3613, 2004 WL 2211660 at *2 (S.D.N.Y. Oct. 4, 2004) (Peck, M.J.); <u>Gucci Am., Inc.</u> v. <u>Duty Free Apparel, Ltd.</u>, 315 F. Supp. 2d 511, 520 (S.D.N.Y.) ("Congress added the statutory damages provision of the Lanham Act in 1995 because 'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept . . ., making proving actual damages in these cases extremely difficult if not impossible.'") (quoting Senate report), <u>amended in part</u>, 328 F. Supp. 2d 439 (S.D.N.Y. 2004); <u>Tiffany (NJ) Inc.</u> v. <u>Luban</u>, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) (same); <u>Polo Ralph Lauren, L.P.</u> v. <u>3M Trading Co.</u>, 97 Civ. 4824, 1999 WL 33740332 at *4 (S.D.N.Y. Apr. 19, 1999) ("It is often the case that 'counterfeiters' records are nonexistent, inadequate or deceptively kept in order to willfully deflate the level of counterfeiting activity actually engaged in, making proving actual damages in these cases extremely difficult if not impossible.'"); <u>Sara Lee Corp.</u> v. <u>Bags of N.Y., Inc.</u>, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999) ("Statutory damages are most appropriate when infringer nondisclosure during fact finding leaves damages uncertain.").

AW Indus., Inc. v. Sleep Well Mattress, Inc., No. 08-CV-3969, 2009 WL 485186 at *4 (E.D.N.Y. Feb. 26, 2009) (Defendant "has defaulted in this case, which deems it a willful infringer."); Rodgers v. Anderson, 2005 WL 950021 at *2 ("In this case, defendants have defaulted and by virtue of their default, are deemed to be willful infringers.") (Peck, M.J.); Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d at 124 ("By virtue of the default, the [defendant]s' infringement is deemed willful, . . ."); 3 Anne Gilson Lalonde & Jerome Gilson, Gilson on Trademarks § 14.03(9)(a)(ii)(G) (2009 ed.) ("The failure to appear may itself suggest willfulness or bad faith.").

Accordingly, an award of statutory damages under § 1117(c)(2) is appropriate.

Besides setting the cap at $2 million per mark per type of good, and directing that courts award damages that are "just," § 1117(c)(2) does not provide guidance for determining the appropriate award in a case involving willful trademark violations. Malletier v. Carduci Leather Fashions, Inc., 648 F. Supp. 2d at 504; accord, e.g., Union of Orthodox Jewish Congregations of Am. v. Am. Food & Beverage Inc., 704 F. Supp. 2d at 291; Louis Vuitton Malletier, S.A. v. LY USA, 2008 WL 5637161 at *1; Gucci Am., Inc. v. MyReplicaHandbag.com, 07 Civ. 2438, 2008 WL 512789 at *2 (S.D.N.Y. Feb. 26, 2008). Thus, "courts often have looked for guidance to the better developed case law under the Copyright Act, 17 U.S.C. § 504(c), which permits an award of statutory damages for willful copyright infringement." Malletier v. Carduci Leather Fashions, Inc., 648 F. Supp. 2d at 504 (citing cases).[5/] "As those cases indicate, where, as here, a defendant is

---

[5/]    Accord, e.g., Union of Orthodox Jewish Congregations of Am. v. Am. Food & Beverage Inc., 704 F. Supp. 2d at 291; Louis Vuitton Malletier, S.A. v. LY USA, 2008 WL 5637161 (continued...)

shown to have acted willfully, a statutory award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others." Malletier v. Carduci Leather Fashions, Inc., 648 F. Supp. 2d at 504; accord, e.g., Gucci Am., Inc. v. MyReplicaHandbag.com, 2008 WL 512789 at *3; Polo Ralph Lauren, L.P. v. 3M Trading Co., 1999 WL 33740332 at *5 ("Judged by [the Copyright Act's] standards, an award of statutory damages is designed to serve both compensatory and punitive purposes.").

        Courts determining damages pursuant to § 1117(c)(2) have considered the following factors:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc., 2006 WL 728407 at *6; accord, e.g., Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1117 (2d Cir. 1986) (in copyright case, directing that courts should consider the factors listed above in awarding statutory damages for willful

---

5/      (...continued)
at *1; Gucci Am., Inc. v. MyReplicaHandbag.com, 2008 WL 512789 at *2; Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc., 2006 WL 728407 at *6; Rodgers v. Anderson, 2005 WL 950021 at *2; Silhouette Int'l Schmied AG v. Chakhbazian, 2004 WL 2211660 at *2 & n.1; Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d at 520; Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d at 124-25; Polo Ralph Lauren, L.P. v. 3M Trading Co., 1999 WL 33740332 at *5; Sara Lee Corp. v. Bags of N.Y., Inc., 36 F. Supp. 2d at 166-67; 5 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 30:95 (2009 ed.) ("The body of case law developed to interpret the similar statutory damages provision in copyright law should prove helpful in applying the [§ 1117(c)] counterfeit statutory damages option.").

copyright infringement); Union of Orthodox Jewish Congregations of Am. v. Am. Food & Beverage Inc., 704 F. Supp. 2d at 291; Burberry Ltd. v. Euro Moda, Inc., 2009 WL 4432678 at *4-5 (applying these factors to award statutory damages for willful trademark infringement); Louis Vuitton Malletier, S.A. v. LY USA, 2008 WL 5637161 at *1-2; Gucci Am., Inc. v. MyReplicaHandbag.com, 2008 WL 512789 at *2-3; Hermes Int'l v. Kiernan, No. 06-CV-3605, 2008 WL 4163208 at *4 (E.D.N.Y. Aug. 28, 2008); Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d at 520; Polo Ralph Lauren, L.P. v. 3M Trading Co., 1999 WL 33740332 at *5; Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d at 125.

Here, the key factors weigh in plaintiffs' favor.  As to the first two factors, there is nothing in the record about the revenue defendants earned selling counterfeit merchandise or whether plaintiffs lost any revenue from defendants' infringement.  As to the third factor, the record includes no specific information indicating the monetary value of plaintiffs' brands, except that they are widely advertised on television, and "we infer from the well-known reputations of most or all of the trademarks and the sea of advertising that presses them on the consciousness of the buying public that they are indeed valuable." Polo Ralph Lauren v. 3M Trading Co., 1999 WL 33740332 at *6.  As to the fourth factor, "the goal of deterring similar conduct by other enterprises requires a substantial award." Louis Vuitton Malletier, S.A. v. LY USA, 2008 WL 5637161 at *2; accord, e.g., Rolex Watch U .S.A., Inc. v. Jones, 99 Civ. 2359, 2002 WL 596354 at *5 (S.D.N.Y. Apr. 17, 2002).  As to the fifth factor, this Court has already found that defendants' conduct was willful. (See pages 5 & 9 above.)  As to the sixth factor, defendants have not provided records to assess the

value of the infringing material.[6]   As to the seventh factor, the amended complaint alleges "Defendants have wilfully continued their course of wrongful conduct after being put on notice of Plaintiffs' claims" regarding infringement of the Emery Cat, Mister Steamy, Touch N Brush, Snuggie and Bumpits trademarks.  (Am. Compl. ¶¶ 127, 163, 199, 256, 307.)

        Defendant Mirpur's opposition affidavit, however, claims that "Defendant's have agreed in the past upon notification of the plaintiff's to withdraw from the products that belongs to plaintiff's and further have respected such notification till today." (Mirpur Aff. at p. 4.)  The Court gives little weight to this claim, since Mirpur also claims that defendants "have not shipped these products in plaintiff's packaging or using plaintiff's copyright and trademarks or infringed any plaintiff's patents." (Mirpur Aff. at p. 1.)  The Court informed Mirpur that a "default already has been entered by Judge Berman and the only issue left (unless defendants, by counsel, move to vacate the default and show good cause for doing so) before the court is the amount of damages and the scope of the injunctive relief to be granted to plaintiffs." (Dkt. No. 28: 9/7/10 Order.)  Defendants did not move to vacate the default or otherwise further respond.  And Mirppur's claim of non-infringement, despite the exhibits to her affidavit, is belied by the exhibits to the amended complaint.  For example, on Deember 2, 2009, Mirpur announced a "brand new product," called "New Snuggie for Couples." (Am. Compl. Ex. N.)  Media Brands advertised its version of the Snuggie in another add as the "SnugMe," along with the "As Seen on TV" logo (Am. Compl. Ex.

_____

[6]    While Mirpur did individually submit a pro se opposition to plaintiffs' statutory damages motion (Dkt. No. 29: 8/30/10 Mirpur Aff.), she provided no information as to Media Brands sales or the other factors used in determining statutory damagaes.

O) – not the "Warmie" as shown in Mirpur's affidavit (Mirpur Aff. Ex. A.3.) Media Brands' website catalog listed "Product/Service (We Sell)" as including Bumpits, Strap Perfect, Aqua Globe and Snuggie.  (Am. Compl. Ex. P; see also Am. Compl. Exs. Q-R.)  The Court cannot credit Mirpur's affidavit asserting stopping infringement on notice when at the same time she claims defendants never infringed – which is proved by the exhibits to the Amended Complaint to be untrue (and infringement is deemed proven by the default judgment, which defendants have not moved to set aside).

Based particularly on the fifth and seventh factors, I find that, as requested by plaintiffs, an award of $50,000 in statutory damages is appropriate for each of Emery Cat, Mister Steamy, Touch N Brush, Snuggie and Bumpits trademarks, but that an award of $25,000 is more appropriate for each of the Topsy Turvy and Strap Perfect marks (see page 13 above).  See, e.g., Louis Vuitton Malletier, S.A. v. LY USA, 2008 WL 5637161 at *2-3; Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d at 522 (Defendant "knew he was under an injunction not to sell counterfeit merchandise" but "sold at least three more counterfeit Gucci items within a month of the Court's injunction," justifying substantial statutory damage award.); Polo Ralph Lauren, L.P. v. 3M Trading Co., 1999 WL 33740332 at *7 ("[T]he key consideration is the persistence of defendants' defiance of the requirements of the Lanham Act and of prior court orders enjoining further infringements."); Sara Lee Corp. v. Bags of NY, Inc., 36 F. Supp. 2d at 170 ("The failure of earlier, milder measures against the defendants highlight both the need for stronger deterrence and the need to redress the defendants' repeated efforts to defy and mislead the court.").

Most judges have issued awards far below the statutory maximum ($2 million per infringed mark), on a per mark basis, where the defendant willfully infringes on the plaintiff's mark and fails to stop such behavior after being put on notice by the plaintiff or the court, but where there is no concrete information about the defendant's actual sales figures and profits and the estimate of plaintiff's lost revenue.  See, e.g., Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc., 06 Civ. 7827, 2008 WL 4449533 at *5-6 (S.D.N.Y. Oct. 2, 2008) ("[G]iven that defendant apparently ran a business substantial enough to allow it to rent space in a highly-trafficked area of Manhattan, the request for $200,000 per counterfeit mark per type of goods sold is appropriate.  Courts have awarded similar damages in other cases in which there was little information as to the scope or circumstances of a defendant's infringement."  Award of $1 million based on five marks.); Pitbull Prods., Inc. v. Universal Netmedia, Inc., 07 Civ. 1784, 2007 WL 3287368 at *3-4 (S.D.N.Y. Nov. 7, 2007) (Where defendants' conduct was willful and defendants' failure to respond to default judgment papers "left the Court with no information as to any of the factors relating to the defendants' circumstances," the Court declined to award maximum statutory damages: "Taking into account the defendants' failure to submit to this Court any documentation from which to determine damages, the willfulness of . . . their conduct, and the deterrent effect a damages award would have on both the defendants and others, the Court believes that $250,000 per mark [for two marks] is sufficient to compensate [plaintiff] for losses it suffered and to deter both the defendants and others from infringing on those marks in the future. Courts have awarded similar damages in other cases in which there was little information as to the defendants' infringement."); Kenneth Jay Lane, Inc.

v. Heavenly Apparel, Inc., 2006 WL 728407 at *6 (Where plaintiff did not provide the Court with any information about defendant's "business," the "market in which [defendant] sold . . . counterfeit products, or any estimate of the volume of products bearing the plaintiff's marks sold by the defendant," the Court awarded $125,000 per infringed mark because that amount would sufficiently "impress upon [defendant] that there are consequences for its misconduct" and would "serve as a specific deterrent to [defendant] and as a general deterrent to others who might contemplate engaging in infringing behavior in the future."); Rodgers v. Anderson, 2005 WL 950021 at *3 ("$250,000 in statutory damages based on willful infringement is sufficient and appropriate to deter defendants and others."); Polo Ralph Lauren, L.P. v. 3M Trading Co., 1999 WL 33740332 at *7 ("For our purposes the key consideration is the persistence of defendants' defiance of the requirements of the Lanham Act and of prior court orders enjoining further infringements . . . we conclude that a statutory damage award of $25,000.00 for each trademark proven to have been counterfeited should provide sufficient deterrence by denying defendants the fruits of their wrongful conduct while at the same time compensating plaintiffs for whatever damage their marks may have suffered by virtue of the distribution of counterfeit items through the premises in question.").

       Here, statutory damages of $25,000 - 50,000 per mark are well below the statutory maximum.  In determining if statutory damages of $25,000 - 50,000 per mark is an appropriate award, in addition to accounting for the defendants' wilfullness, "a court must strive to ensure that the amount fixed will act as a specific deterrent to the defendant(s) before the court and as a general deterrent to others who might consider engaging in infringing conduct in the future." Kenneth Jay

Lane Inc. v. Heavenly Apparel, Inc., 2006 WL 728407 at *6.  Here, even without any information as to defendants' earnings or plaintiffs' losses, an award of statutorty damages of $25,000 - 50,000 per infringed mark "will impress upon [defendants] that there are consequences for [their] misconduct.  In addition, statutory damages of this amount will serve as a specific deterrent to [defendants] and as a general deterrent to others who might contemplate engaging in infringing behavior in the future."  Kenneth Jay Lane Inc. v. Heavenly Apparel, Inc., 2006 WL 728407 at *6; see also, e.g., Coach Servs., Inc. v. K Ya Int'l, Inc., 09 Civ. 4656, 2010 WL 2771897 at *3 (S.D.N.Y. June 10, 2010) ($20,000 "is an appropriate [trademark infringement] award, as it effectively serves both the punitive and deterrent purposes of 15 U.S.C. 1117(c)"), report & rec. adopted, 2010 WL 2771907 (S.D.N.Y. July 12, 2010) (Berman, D.J.); Church & Dwight Co. v. Kaloti Enters. of Michigan, L.L.C., 697 F. Supp. 2d 287, 295 (E.D.N.Y. 2009) (awarding statutory damages of $50,000 against defendants who did not "traffic[] in large-scale quantities of counterfeit" goods as "sufficient to both compensate plaintiff for its losses and to deter [defendant] from violating plaintiff's trademarks again"); Cartier Int'l B.V. v. Ben-Menachem, 06 Civ. 3917, 2008 WL 64005 at *15 (S.D.N.Y. Jan. 3, 2008) ($50,000 statutory damages for each of nineteen counterfeited marks is "sufficient to meet the goals of [15 U.S.C. § 1117(c)], including compensating the Plaintiffs and deterring future violations"); Microsoft Corp. v. Compusource Distrib., Inc., 115 F. Supp. 2d 800, 812 (E.D. Mich. 2000) (in a counterfeit trademark case where

the Court found defendant's willful conduct "egregious," the court awarded statutory damages under

§ 1117(c) "of $50,000.00 for each of its eight trademarks at issue").[7]

       Accordingly, the Court should award plaintiffs $300,000 in statutory damages for

trademark infringement under 15 U.S.C. § 1117(c).

## II.    COPYRIGHT DAMAGES

       Pursuant to 17 U.S.C. §§ 504(c)(1) & (2), plaintiffs seek to recover statutory

damages of $50,000 for Media Brands' infringement of Merchant's copyrighted Touch N Brush

website images.  (Dkt. No. 27: 8/6/10 Yousuf Aff. ¶ 2; Dkt. No. 21: Pls. Default Judgment Br. at

9.)

       Section 504(c) provides, in part:

       (c)    Statutory Damages

       (1) Except as provided by clause (2) of this subsection, the copyright owner
       may elect, at any time before final judgment is rendered, to recover, instead
       of actual damages and profits, an award of statutory damages for all
       infringements involved in the action, with respect to any one work, for which
       any one infringer is liable individually, or for which any two or more

---

[7]    While plaintiffs' phrase their statutory damages request on this inquest as "not less than
$50,000 per mark" (e.g., 8/5/10 Yousuf Aff. ¶ 3(a)), that strongly suggests that plaintiffs are
satisfied with $50,000 per mark.  It would be unfair to defendants to award plaintiffs more
than the specific amount plaintiffs requested.  Cf. Fed. R. Civ. P. 54(c) ("A default judgment
must not differ in kind from, or exceed in amount, what is demanded in the pleadings.");
Silge v. Merz, 510 F.3d 157, 159-60 (2d Cir. 2007) (in the event of default, damages are
limited in kind and amount to the relief requested in the original pleading, because
defendants should be able to decide whether to spend the time and money to litigate a case
or to default based on the damages sought in the complaint against them); DLJ Mortg.
Capital, Inc. v. E. Am. Mortg. Co., 2009 WL 1835025 at *3 (damages "must be capped at . . .
the amount stated in the Complaint's prayer for relief.").

infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.  For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000 . . .

17 U.S.C. §§ 504(c)(1)-(2).

_____Statutory damages for copyright infringement "'are available without proof of plaintiff's actual damages or proof of any damages.'"  Nat'l Football League v. PrimeTime 24 Joint Venture, 131 F. Supp. 2d 458, 472 (S.D.N.Y. 2001) (Peck, M.J.) (quoting Starbucks Corp. v. Morgan, 99 Civ. 1404, 2000 WL 949665 at *2 (S.D.N.Y. July 11, 2000) (Peck, M.J.) (citing 17 U.S.C. § 504(c)(1))); see, e.g., Bus. Trends Analysts, Inc. v. Freedonia Group, Inc., 887 F.2d 399, 403 (2d Cir. 1989) ("[C]opyright plaintiffs may elect at any time before final judgment to receive statutory damages under Section 504(c), a method useful where proof of actual damages or profits is insufficient."); UMG Recordings, Inc. v. Griffin, No. 08-CV-00274, 2008 WL 4974856 at *2 (N.D.N.Y. Nov. 24, 2008). ("[A] plaintiff may elect statutory damages regardless of the adequacy of the evidence offered as to his actual damages and the amount of the defendant's profits.") (quotations omitted); Interscope Records v. Sharp, No. 05-CV-920, 2007 WL 4555905 at *2 (N.D.N.Y. Dec. 19, 2007) (same); 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.04[A] (2009 ed.) ("Under the current [Copyright] Act, the copyright owner may elect to recover statutory damages, instead of actual damages and defendant's profits.  He may, moreover,

make such an election regardless of the adequacy of the evidence offered as to his actual damages and the amount of defendant's profits, and even if he has intentionally declined to offer such evidence, although it was available. . . . The availability of statutory damages under the current Act, even under circumstances in which plaintiff's damages or defendant's profits are susceptible to precise evaluation, represents a departure from the pertinent provisions of the 1909 Act.") (fns. omitted); 6 William F. Patry, Patry on Copyright §§ 22:153-208 (2009 ed.).  As Professor Patry has explained:



Since actual damages and profits frequently are difficult to prove, the Copyright Act provides for minimum and maximum statutory damages.  These damages may be elected by the copyright owner at any time before final judgment is rendered, without proof of actual damages.

2 William F. Patry, Copyright Law & Practice at 1170 (1994) (fns. omitted).

Here, while an award of statutory damages for defendants' infringing use of plaintiffs' copyrighted Touch N Brush website images is appropriate, plaintiffs' request of $50,000 is too high. Having taken the factors to determine statutory damages for trademark infringement from the copyright infringement case law, the same seven factors apply here, and the analysis is nearly identical.  (See pages 10-13 above.)  The Court finds that $25,000 in statutory damages for the copyright infringement claim is appropriate.

### III.    ATTORNEYS' FEES, COSTS AND THE SCOPE OF INJUNCTIVE RELIEF

Plaintiffs also seek attorneys' fees (Dkt. No. 27: 8/6/10 Yousuf Aff. ¶ 3(c); Dkt. No. 21: Pls. Default Judgment Br. at 8-9), which may be awarded for trademark infringement in "exceptional cases."  See, e.g., Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 221 (2d Cir. 2003) ("The Lanham Act authorizes the award of attorney's fees to prevailing parties in 'exceptional cases,' 15 U.S.C. § 1117(a), which we have understood to mean instances of . . . 'willful infringement.'"); Microsoft Corp. v. Black Cat Computer Wholesale, Inc., 269 F. Supp. 2d 118, 124 (W.D.N.Y. 2002) ("The Lanham [A]ct specifically provides that 'the court in exceptional cases may award reasonable attorney fees to the prevailing party.' 15 U.S.C. § 1117(a).  A willful infringement may be considered an exceptional case under the Lanham Act.") (citing Second Circuit authority); GTFM, Inc. v. Solid Clothing Inc., 215 F. Supp. 2d 273, 305-06 (S.D.N.Y. 2002) ("'Exceptional' circumstances include willful infringement. . . . [Defendant] engaged in willful infringement.  If defendant's bad faith alone were not sufficient to make this an exceptional case, its continued sales between March and November 2001, its conduct during discovery, and its perjury during deposition and at trial make this an exceptional case.  GTFM is entitled to reasonable attorney's fees."); Rolex Watch U.S.A., Inc. v. Brown, 01 Civ. 9155, 2002 WL 1226863 at *3 (S.D.N.Y. June 5, 2002) (Peck, M.J.) (citing cases).

This Court has previously noted that there is some question as to the availability of attorneys' fees for trademark infringement where statutory damages are awarded under § 1117(c) as opposed to actual charges damages under § 1117(a) or (b).  See Rolex Watch U.S.A., Inc. v.

Brown, 2002 WL 1226863 at *3.[8/]  While at least one judge has declined to award attorneys' fees under § 1117(c), see Gucci America, Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 522 (S.D.N.Y. 2004), most decisions have awarded attorneys' fees even where the damage award is pursuant to § 1117(c).  See, e.g., Church & Dwight Co. v. Kaloti Enters. of Michigan, L.L.C., 697 F. Supp. 2d 287, 293-94 (E.D.N.Y. 2009) (authorizing attorney's fees in addition to 1117(c) statutory damages in a case involving willful infringement.) (citing cases); Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003) (Gucci judge awards attorneys' fees without discussion); Rolex Watch U.S.A., Inc. v Jones, 99 Civ. 2359, 2002 WL 596354 at *6 (S.D.N.Y. Apr. 17, 2002); Sara Lee Corp. v. Bags of New York, Inc., 36 F. Supp. 2d 161, 170-71 (S.D.N.Y. 1999).

_____

[8/]      In Brown, I wrote:

> Section 1117(a) provides for actual damages plus attorneys' fees in "exceptional cases," and § 1117(b) provides for enhanced damages and attorneys' fees in cases where the defendant intentionally used a counterfeit mark.  Rolex here, however, seeks, and is receiving, enhanced willfulness statutory damages under 15 U.S.C. § 1117(c), which refers to awarding statutory damages "instead of" damages under § 1117(a). . . . Perhaps Congress intended § 1117(c) to replace only the damages available under § 1117(a) while leaving available the "exceptional case" attorneys' fee provision of § 1117(a). Or perhaps because of the enhanced amount of statutory damages under § 1117(c) or a legislative oversight, attorneys' fees are not available where statutory damages are awarded under § 1117(c).

Rolex Watch U.S.A., Inc. v. Brown, 2002 WL 1226863 at *3; accord, e.g., Silhouette Int'l Schmied AG v. Chakhbazian, 04 Civ. 3613, 2004 WL 2211660 at *3 & n.2 (S.D.N.Y. Oct. 4, 2004) (Peck, M.J.).

The Court need not resolve that issue here.  Defendants also are liable to plaintiffs for willful copyright infringement under 17 U.S.C. § 101 (see Point II above), entitling plaintiffs to attorneys' fees under 17 U.S.C. § 505.

Section 505 provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

The Second Circuit has held that "[w]hen determining whether to award attorneys fees [under 17 U.S.C. § 505], district courts may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence. . . . The third factor – objective unreasonableness – should be given substantial weight." Bryant v. Media Right Prods., Inc., 603 F.3d 135, 144 (2d Cir. 2010).[9]

---

[9]   See also, e.g., Matthew Bender & Co. v. West Publ'g Co., 240 F.3d 116, 122 (2d Cir. 2001) ("[The] emphasis on objective reasonableness is firmly rooted in Fogerty's admonition that any factor a court considers in deciding whether to award attorneys' fees must be 'faithful to the purposes of the Copyright Act.' . . . [T]he imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act.") (citations omitted); EMI Catalogue P'ship v. CBS/Fox Co., 86 Civ. 1149, 1996 WL 280813 at *2 (S.D.N.Y. May 24, 1996) (the objective reasonableness of the plaintiff's claim was central in determining that attorney's fees were not justified.).

   Here, by failing to answer the complaint, defendants have not "assert[ed] any defense, frivolous or otherwise." <u>Pearson Educ., Inc.</u> v. <u>Vergara</u>, 09 Civ. 6832, 2010 WL 3744033 at *5 (S.D.N.Y. Sept. 27, 2010).   The Court has found Mirpur's opposition affidavit to lack credibility.  (<u>See</u> pages 13-14 above.)  The facts of this case weigh in favor of awarding attorneys' fees and costs under 17 U.S.C. § 505.  <u>See</u>, <u>e.g.</u>, <u>Pearson Educ., Inc.</u> v. <u>Vergara</u>, 2010 WL 3744033 at *5 ("awarding costs and attorney's fees is warranted, in order to compensate the plaintiffs for the costs they incurred to retain counsel to initiate this litigation and secure judgment by default."); <u>Gladys Music</u> v. <u>Bilbat Radio, Inc.</u>, No. 07-CV-6086, 2007 WL 3033960 at *1 (W.D.N.Y. Oct. 15, 2007) (awarding plaintiff reasonable attorney's fees in a copyright infringement case where defendant defaulted and the amount of attorney's fees "due to Plaintiffs . . . deriv[ed] from Defendants' repeated violations of copyright law.").

   Nevertheless, plaintiffs' original request for attorneys' fees failed to show what counsel did, only showing a billing rate and fee amount.  (<u>See</u> Dkt. No. 20: Yousuf Aff. Ex. G.) The Court cannot award attorneys' fees without knowing what work counsel performed.  The supplemental Yousuf affidavit does describe services rendered for part of the case, from May 3, 2010 to July 23, 2010.   (Dkt. No. 27: Yousuf 8/6/10 Aff. Ex. A.)  Those fees total $15,435, but some of the entries are vague and others reflect work done at an attorney rate that could and should have been done by a paralegal or secretary.  Accordingly, the Court will award plaintiffs $12,000 in attorneys' fees.  Moreover, since the Court cannot determine which costs were necessary as opposed to for attorney convenience (in connection with photocopy and Federal Express bills), the

Court does not award costs.  The Court finds that the award of statutory damages and the limited attorneys' fees awarded are more than adequate to make plaintiffs whole and to deter defendants (and others) from engaging in infringement.

Finally, the Court has reviewed the scope of the injunction already entered by Judge Berman and does not see any need for it to be modified.

## CONCLUSION

For the reasons set forth above, the Court should award plaintiffs statutory damages of $325,000 for trademark and copyright infringement and attorneys' fees of $12,000, for a total of $337,000.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, 500 Pearl Street, Room 650, and to my chambers, 500 Pearl Street, Room 1370.  Any requests for an extension of time for filing objections must be directed to Judge Berman (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d

298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health &

Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d

Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed.

R. Civ. P. 72.

DATED:        New York, New York
              November 5, 2010


                                        _____
                                        Andrew J. Peck
                                        United States Magistrate Judge


Copies **by ECF** to:    Adam M. Cohen, Esq.
                         Sarah Hawa Bawany Yousuf, Esq.
                         Saonjay Mirpur & Media Brands Co. Limited (by Federal Express)
                         Judge Richard M. Berman